26 247
55 654
26 247
56 274

## MATTHIESSEN and WIECHERS SUGAR REFINING COMPANY *vs.* THE MAYOR AND ALDERMEN OF JERSEY CITY and others.

1. Where municipal authorities are constituted, by charter, the judges of the necessity of the extension of a street, this court will not, in the absence of all allegation of fraud or evil practice, gainsay or review their conclusion.

2. But, however necessary the work, and however conducive to the public advantage, if it is proposed to execute it in disregard or contravention of constitutional rights, the duty of this court is obvious, and will be discharged.

3. The complainants seek to restrain the municipal authorities of Jersey City, and others, from building a bridge or viaduct, in extension of Washington street, in that city, across a tide-water passage-way, through which they claim the right, by private grants, and as riparian owners, under grant from the state, of free and uninterrupted communication. In 1863, The Morris Canal and Banking Company, and The Central Railroad Company, granted, to complainants' grantors, a passage-way, for the navigation of vessels, to and from a certain block of land and the channel of the Hudson river, by a canal one hundred and fifty feet wide, from said block to the basin of the canal company, and a convenient passage-way across the same to said channel. In 1867, the state granted to the canal company all its right, title and interest in certain land covered with water, including that over which was the water passage-way granted by that company to complainants' grantors. This grant was upon the express condition that, for the purpose of preserving a water basin, &c., and of leaving open, in the premises thereby granted, a public navigation for all vessels to and from the Hudson river and all waters west, &c., the canal company should forever keep open certain existing gaps, one hundred and fifty feet in width, and like gaps, of like width, in any structure to be erected on the premises thereby granted, for free public navigation between above points. This grant provided for the free access, through this passage-way, of all

owners and occupants of shore property, lying north and west of the property described in the grant. Among these were the complainants. Other conveyances were made to the complainants, but by none of them did they acquire any title to the land whereon the abutments, or the central pier of the proposed bridge, are to stand. On bill to enjoin the erection of a bridge over the tide water passage-way, *held*—

1. The complainants' claim is to an easement only; and whether the right of passage granted by The Morris Canal Company to the complainants' grantors, or that which was secured to the shore owners by the act of the legislature of 1867, be considered, the easement is a public one.

2. The purchase by the canal company, under the act of 1867, so far and only so far, as necessary for the grant of the water passage-way, which, without title, the canal company had granted in 1863, enures, by estoppel, as against them, to the benefit of the complainants.

3. The right of passage-way thus granted was a public right, and the effect of the grant was, and is, merely to prevent the canal company, and their grantees, from interrupting or interfering with that right, as secured by the agreement, and to compel the company, as between them and the complainants, and their grantees, entitled to the benefit of the agreement, to maintain the passage-way. It was the public right of navigation, guaranteed, to a limited extent, to a shore owner, against destruction or obstruction by the grantee of the state, as owner of the land between high and low water marks.

4. The right secured to the complainants, as shore owners, by the act of 1867, was the public right, the common right of navigation, which the legislature intended to secure to the shore owners, against the acts of the canal company, or its grantees.

5. The legislature did not intend, by that act, to grant any new right, or to increase an existing one, but merely to secure the enjoyment of an existing public right.

4. The legislature has the power to authorize the construction of a public work, which will interfere with the enjoyment of a public right of navigation, and that without providing for compensation for the injury.

5. This court will not enjoin the construction of a public work, authorized by the legislature, unless the intervention of the court is clearly called for.

6. Under a section authorizing the extension of a street, in a certain way and under certain restrictions, and providing that the authorities so empowered may also, at their discretion, extend other streets named in the same section, and similarly situated, *held*, that it was thereby intended to confer the power to extend such other streets in the same way, and subject to the same restrictions.

7. The power to "open and extend" streets, construed, in this case, to signify construction, as well as laying out.

Sugar Refining Co. v. Mayor, &c., of Jersey City.

Bill for injunction.  On order to show cause why injunction should not be issued.  On bill, answer of the city, and affidavits.

*Mr. W. P. Douglass, Mr. W. A. Lewis* and *Mr. B. Williamson,* for the motion.

*Mr. A. T. McGill* and *Mr. R. Gilchrist,* contra.


THE CHANCELLOR.

The bill in this cause is filed to restrain the defendants, the corporation of Jersey City and the board of chosen freeholders of Hudson county, the board of public works of Jersey City and the contractor for the work, from building a bridge or viaduct, in extension of Washington street, in that city, across the tide-water passage-way, between the dry land on the south side of that passage-way and the dry land on the north side.  The city and county authorities are acting in conjunction in building the bridge, which is a necessary connection in the extension of Washington street to East Central avenue.  Of the necessity of the connection there seems to be no room for doubt, for access from the dry ground on either side of the passage-way to that on the other side can, at that place, now only be had by the public, either by crossing the Hudson river to New York by one ferry and recrossing by another, or by a detour of land of nearly three miles, or by being ferried over the passage-way in an old scow, kept there for hire for the purpose; the last mentioned means of communication being obviously of an unsafe as well as inconvenient character.  The complainants, indeed, insist, that there is no public necessity for a bridge at that place, and that a bridge at Warren street, which is the next parallel street west of Washington street, and is distant about four hundred feet, will supply all the connection which is needed between the two parts of the municipal territory, which are there separated from each other by the water pas-

sage-way in question. The city authorities are constituted, by the charter, the judges of the necessity of the extension of Washington street, and it is not for this court, in the absence of all allegation of fraud or evil practice, to gainsay or review their conclusion. But, however necessary the work, and however conducive to the public advantage, if it is proposed to execute it in disregard or contravention of the constitutional rights of the complainants, the duty of this court is obvious, and will be discharged.

The complainants' title to the relief sought by their bill, is based on their claim to a right of way, granted to them in 1863, by The Morris Canal and Banking Company, (which then claimed to have the right to make such grant,) and their right as riparian owners. By the grant referred to, the canal company and The Central Railroad Company, granted to Matthiessen and Wiechers, (under whom the complainants claim by grant,) and their heirs and assigns, proprietors and occupiers of the sugar-house property, and of a block of land south of South street, one hundred and fifty feet in length, along the south side of South street, and two hundred feet on the east and west sides thereof, and in front of the premises conveyed to Matthiessen and Wiechers by Solomon Alofsen, a passage-way for the navigation of vessels doing business in connection therewith, to and from the above mentioned block and the channel of the Hudson river, by a canal, one hundred and fifty feet wide, along and from the south side of the block to the basin of the canal company, and a convenient passage across the same to the said channel; and agreed to keep the depth of water in the passage-way as great as it then was, and that they would, before the 1st of July following, dredge the passage-way to the depth of five and a half feet of water, at ordinary low tide, and forever thereafter keep and maintain it at that depth. The state, in 1867, granted to the canal company all its right, title and interest in certain land covered with water, including that over which was the water passage-way granted by that company to the complainants' grantors. This grant by the state was on the express condi-

tion that, for the purpose of preserving a water basin to the west of the then existing westerly bulk-head, on the premises, and of leaving open, on the premises thereby granted, a public navigation for all vessels to and from the Hudson river, and all parts of the waters west of the westerly bulk-head just mentioned, the company should forever keep open the then existing gaps in the easterly and westerly bulk-heads, each of one hundred and fifty feet in width, and like gaps, of like width, in any structure to be erected on the premises thereby granted, so that the public might, with all vessels, freely navigate to and from the channel of the Hudson river, and all places east and west of the westerly bulk-heads, without the payment of tolls or charges; provided that the opening should be kept in such condition that the owners and occupants of shore property lying north and west of the property described in the grant, might, at all times, have free access to, as well as through the same. The complainants claim title to their grant of passage-way from the canal company, by the estoppel. They also claim that their right as riparian owners to the navigation of the passage-way was, by the last mentioned grant, (which was by act of the legislature,) specially secured to them, and that they are entitled to be protected in the enjoyment of the right of navigation so acquired and secured. They do not claim to be the owners of the land covered with water, over which the passage in question is claimed, but they claim as owners and occupants of shore property lying north and west of the land granted by the state to the canal company, as well as under the grant by the canal company, to Matthiessen and Wiechers.

In the year 1871, the Central Railroad Company conveyed to the complainants, in fee, a tract of land described as follows : Beginning at a point where the centre line of Washington street, extended southerly, intersects the centre line of South street ; thence westerly along the centre line of the latter street one hundred and fifteen feet, to the boundary line of the sugar house lot ; thence southerly, along the line of that lot, and parallel to the centre line of Washington street extended, two hundred and sixty feet, to the Morris

canal basin ; thence easterly, along the line of the basin one hundred and fifteen feet, to the centre line of Washington street extended, two hundred and sixty feet, to the beginning. This conveyance was expressly subject to the right of way of the railroad company and of the public, for public use, and as a public street, over the portion of Washington street extended, lying within the boundaries of the above description. Subsequently, in 1872, the state granted to the complainants, in fee, a tract of land, in the description and boundaries of which is included the land conveyed by the railroad company.

By none of these conveyances did the complainants acquire any title to the land whereon the abutments or the central pier of the proposed bridge or viaduct are to stand. The title to the land on which the pier and the northerly abutment are, is in the canal company. The complainants' claim is to an easement only ; and whether the right of passage granted by the canal company, or that which was secured to the shore owners by the act of the legislature of 1867, be considered, the easement is a public one. The canal company, in 1867, acquired by purchase the title to the land covered by water, over which, in 1863, they had granted and agreed to assure to Matthiessen and Wiechers and their heirs and assigns, owners and occupants of the property in the agreement mentioned, a water passage-way. Their purchase, so far, and only so far, as necessary for the grant of water passage-way above mentioned, which, without title, they had granted in 1863, enures by estoppel as against them, to the benefit of the complainants. But the right of passage-way thus granted, was a public right, and the effect of the grant was and is, merely to prevent the canal company and their grantees from interrupting or interfering with that right, as secured by the agreement, and to compel the company, as between them and the complainants and their grantees entitled to the benefit of the agreement, to maintain the passage-way. It was the public right of navigation, guaranteed to a limited extent, (for the whole width of the strait was about three hundred feet,) to a shore owner, against destruction or obstruction by the grantee of the state,

as owner of the land between high and low water marks. And so, too, as to the right secured to the complainants as shore owners, by the act of 1867. It was the public right, the common right of navigation, which the legislature intended to secure to the shore owners against the acts of the canal company or its grantees. In either aspect of the case, the easement is the same in its character. The legislature did not intend to grant any new right, nor to increase an existing one, but merely to secure the enjoyment of an existing public right. The canal company, having become (for such is the effect of the estoppel) the owners of the land under water, guaranteed to the complainants' grantors and their heirs and assigns, owners and occupants of the land now owned by the complainants, an existing public right of navigation.

It is entirely competent for the legislature, under circumstances such as this case presents, to authorize the construction of a public work which will interfere with the enjoyment of such an easement, and that, too, without providing for compensation for the injury. Though the agreement speaks of the passage-way as a passage-way by means of a canal of one hundred and fifty feet in width, no canal has, in fact, been constructed. The state has authorized the work complained of in this case. By the 64th section of an act approved March 31st, 1871, entitled "an act to reorganize the local government of Jersey City," it was enacted that the board of public works might extend Warren street southerly to the made ground which then was occupied by the New Jersey Central Railroad Company; and for the purpose of carrying out any power by that act delegated to them, the board was authorized to construct such piling, trestle work, crib work and bridging upon and over the land covered with water within the limits of the city, as might be expedient; and the title of the state to the land under water, so far as might be necessary for those purposes, was thereby granted to the municipal corporation; provided, that in the extension or construction of said street the work should be so done, and such draws should be made, that as little hindrance as possible should be presented to the ebb and flow of the tide, and

to navigation in the waters to be crossed. The act further provides, that the board may also, at any time, in their discretion, extend Washington, Van Vorst and Henderson streets, or any street west of Henderson street, and may vacate South street, or any portion thereof. It is clear that in the power thus given to extend Washington street, the grant of the title of the state to the land under water, (if indeed it has any after the grant to the canal company in 1867,) so far as may be necessary for the purpose, is included. But whether it has any title to the land or not, its grant, under this section, authorizes such interference with navigation as may be occasioned by the bridges contemplated by the grant. It is urged by complainants' counsel that the power to extend Washington street, thus conferred, may be construed as having reference to the extension of the street northerly from its then northerly terminus, but, for various reasons, it is obvious that that construction is inadmissible. The legislature had just given authority to extend Warren street southerly over land covered with water, and had granted the title of the state to so much of the land under the water to be crossed as might be necessary for the purpose, and by restrictions had guarded the exercise of the authority. When, in the same section, they forthwith proceeded to give the same authority as to other neighboring streets, parallel with Warren street, and similarly situated in all respects, it is too clear for elucidation, that they intended to confer on the board of works the same power in reference to those streets. And that grant of power was intended to be accompanied by the same cession of title, and to be qualified by the same restrictions. In that connection the authority to extend Washington street, meant to extend it over the land covered with water, in the same manner as the legislature had just authorized the extension of Warren street. It is urged by the complainants' counsel that the grant contained in the section under consideration, as to Warren street itself, is nugatory, because the power principally given is to open and extend the street, and all that is involved in the opening of a new street, or the exten-

sion of an old one, is the acquisition of the requisite interests in the land necessary for such opening or extension, and not the alteration in any way of the physical character of the land acquired; but the legislature, in the section under consideration, not only gives power to extend the street, but expressly authorizes the board, for the purpose of carrying out any power by the act delegated to them, to construct such piling, trestle work, crib work and bridging upon and over the land covered with water, within the limits of the city, as may be expedient, and in the same connection, uses the term construction in connection with extension. The terms extension and opening in that section, are employed to signify construction as well as laying out.

The complainants allege that the construction of the abutments and pier is contrary to the requirements and prohibitions of the supplement, approved March 31st, 1869, to the act "to ascertain the rights of the state, and of riparian owners in the lands lying under the waters of the bay of New York, and elsewhere in this state," approved April 11th, 1864, (*Pamph. L.*, 1869, *p.* 1017); but, by the first section of that act, the premises in question in this suit, with the rest of the land granted to the canal company by the act of March 14th, 1867, are excepted from the provisions of the act. There is nothing in the proposed plan of the bridge to induce this court to interfere with the work.

The order to show cause will be discharged, with costs.